FILED: APRIL 25, 2008
08CV2348 RCC
JUDGE SHADUR
MAGISTRATE JUDGE ASHMAN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **NORFLEET RICHARDSON** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | |
| | ) | |
| | ) | **Jury Trial Requested** |
| **BOVIS LEND LEASE, Inc.,** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, NORFLEET RICHARDSON, by and through his attorneys, LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, BOVIS LEND LEASE states as follows:

### PRELIMINARY STATEMENT

1. This is an action seeking redress for violations of rights guaranteed to Plaintiff by 42 U.S.C. § 1981. Plaintiff seeks mandatory injunctive relief and damages to redress Defendants' discriminatory employment practices.

### JURISDICTIONAL STATEMENT

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection of and to redress deprivation of rights secured by 42 U.S.C. §1981. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### VENUE

3. Venue is proper under 28 U.S.C. § 1391 (b)(1) and (2).

### PARTIES

4. Plaintiff, NORFLEET RICHARDSON, is an African American citizen of the United States who resides in Illinois.

5.      Defendant, BOVIS LEND LEASE is a Florida corporation, which has continuously, and does now employ more than fifteen (15) employees and is engaged in an industry that affects commerce and continues to do business in Illinois. Defendant is subject to the jurisdiction of the Court as an employer within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b).

### 42 U.S.C. 1981-RACE DISCRIMINATION

6.      Paragraphs one (1) through five (5) are incorporated by reference as if fully set out herein.

7.      Throughout the duration of his tenure with Defendant, Plaintiff performance met or exceeded Defendant's legitimate expectations, as exemplified by his attendance record, punctuality, and his willingness to work overtime.

8.      Since beginning his employment with Defendant, Plaintiff was subjected to a campaign of hostile and abusive treatment in his employment resulting from Defendant's animus against African Americans. Examples of such hostile treatment include:

    a)  Plaintiff was terminated the day he began his employment with Defendant in May 2005 for the purported reason of not belonging to a "Black Coalition." Plaintiff was ultimately reinstated as a result of Union intervention.

    b)  From February 2006 through November 2006, when Plaintiff was working at Defendant's location at the Schubert Theater, Plaintiff was subjected to consistent racial harassment by his coworkers, including Ralph, a Laborer. Defendant ultimately promoted Ralph and gave him authority over the terms and conditions of Plaintiff's employment. During the time Plaintiff was employed at Defendant's Schubert Theater location, Ralph repeatedly made comments about how he disliked black people, and referred to a mixed race

2

        Laborer named Jenson as a "Nappy Headed Bastard." Further, at this time Ralph set Plaintiff up for termination by causing Plaintiff to be blamed for an incident where Defendant's fire alarm went off and stealing his company phone.

c) In response to being made aware of the hostile, abusive, and racist language and conduct against Plaintiff, Superintendent Andy told Plaintiff "you must be doing something to provoke it."

d) In November 2006, Plaintiff was informed by Caucasian Superintendent Andy that he was being transferred to the Cottage Grove project because the supervisor at Cottage Grove, Caucasian Dan Fitzpatrick, wanted to terminate a black laborer, but believed he could not do so without replacing him with another black laborer because these were "minority jobs."

e) While working on the Cottage Grove project, Defendant sent Hispanic Maria Torrez to work with Plaintiff. Even though Defendant's management was aware that Torrez not performing her duties, Plaintiff was forced to perform her duties in addition to his own in spite of the fact that Torrez received the same hourly wage as Plaintiff.

f) Contrary to Defendant's policies and procedures, Plaintiff was repeatedly forced to report to other non-African-American laborers with less seniority in a manner not afforded to his similarly situated non-African-American coworkers.

g) While working at the One Museum Park job sites, Plaintiff was threatened by a laborer named Oscar who flipped his knife out in front of Plaintiff, stating

3

        that he was "quick to cut a niger."

    h)    On a separate occasion, while working at the One Museum Park Job sites, Gary, a Caucasian Laborer, directed Plaintiff to a swastika written on the wall and asked Plaintiff if he knew what it meant.

9. In 2007, Defendant promoted Ralph to the position of Labor Foreman. Ralph's position as Labor Foreman gave him control over the terms and conditions of employment for many of Defendant's African American laborers, including the terms and conditions of Plaintiff's employment.

10. During the course of Plaintiff's employment with Defendant, many members of Defendant's management, including, but not limited to, Dan Fitzpatrick, Ralph, and Rick Pedia targeted numerous African American laborers for termination, including, but not limited to, African American Laborer Brian Flagst, African American Laborer Steve, African American Laborer Less, African American Laborer Bobby, African American Laborer Ben and African American Laborer Tony.

11. In November 2007, Plaintiff was directed by Ralph to work at the One Museum Park job sites where he could isolate Plaintiff as the only African American Laborer working at this job site.

12. While working at the One Museum Park job sites, Plaintiff was denied the opportunity to work Sundays, even though all his similarly situated non-African-American laborers, including new workers with substantially less seniority, were permitted to work on Sundays.

13. On March 5, 2008, Ralph, who had previously made racist comments to Plaintiff, went to the One Museum Park job sites for the express purpose of terminating Plaintiff's employment. During this meeting, Ralph terminated Plaintiff's employment for the purported reason

that the work had slowed down, indicating that Plaintiff's work performance was not a cause the termination of his employment.

14. On information and belief, the termination of Plaintiff's employment was in violation of Defendant's Collective Bargaining Agreement with its laborers.

15. Plaintiff was the only laborer at the One Museum Park job sites who was terminated by Defendant during this time, and all the other non-African-American laborers at this location, even those with less experience than Plaintiff, continued their employment with Defendant.

16. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his race, African American, and have deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

17. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NORFLEET RICHARDSON, prays for judgement against Defendant and respectfully requests that this Court:

A. Declare the conduct of the Defendant to be in violation of rights guaranteed to Plaintiff under appropriate federal law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practices that unlawfully discriminates on the basis of race.

C. Order Defendant to make whole NORFLEET RICHARDSON by providing the

affirmative relief necessary to eradicate the effects of the Defendant's unlawful practices;

     D.     Order Defendant to pay lost, foregone, and future wages to NORFLEET RICHARDSON.

     E.     Grant the Plaintiff consequential, compensatory, punitive and any other damages that the Court may deem appropriate.

     F.     Grant the Plaintiff his attorneys' fees, costs, and disbursements; and

     G.     Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

### JURY TRIAL DEMAND

18.     Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

     Respectfully submitted,

     NORFLEET RICHARDSON, Plaintiff,

     By:  s/Lisa Kane

     Lisa Kane, Attorney for Plaintiff

Lisa Kane & Associates, P.C.
Attorney for Plaintiff
120 South LaSalle Street
Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney Code No. 06203093

## Verification

I, NORFLEET RICHARDSON, declare under penalty of perjury that the foregoing is true and correct.

Executed April 23, 2008.

*Norfleet Richardson*
NORFLEET RICHARDSON